## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **MATTHEW A. FRENCH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **No.  07-CV-235-TCK-PJC** |
| | ) | |
| **PHARMACISTS MUTUAL INSURANCE** | ) | |
| **COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Before the Court is Defendant Pharmacists Mutual Insurance Company's ("Pharmacists" or "Defendant") Motion for Summary Judgment (Doc. 17).  For the reasons outlined herein, said motion is hereby GRANTED.

### I.      Background

Plaintiff is a twenty-five year old male who resides in Tulsa, Oklahoma.  In the summer of 2005, Plaintiff was an employee of Select Home Medical Equipment ("Select HME").  On or about June 16, 2005, Plaintiff was involved in an accident while driving a Select HME vehicle on company business.  The accident occurred on a two-lane highway in rural Rogers County near Foyil, Oklahoma.  The area of the highway where the accident occurred does not have a shoulder, has ditches on either side, and is a non-passing area.  Prior to the accident, a black vehicle was traveling ahead of Plaintiff's vehicle.  Plaintiff testified that he had been following the black vehicle for several miles.  As Plaintiff and the black vehicle approached the crest of a hill, a dog "flipped out behind [the black vehicle and] launched out from behind [the black vehicle.]"  (*See* Sworn Statement of Plaintiff, Ex. 2 to Def.'s Mot. for Summ. J. at 38.)  Plaintiff estimated that at the time he first saw

1

the dog, he was at least three to four car lengths behind the black vehicle.  Plaintiff also testified that,

at that time, he was traveling fifty or fifty-five miles per hour, which was in excess of the posted

speed limit of forty-five miles per hour.

After hitting the dog, the black vehicle continued to drive straight.  It did not swerve or move

from its lane of travel.  Nor did it stop.[1]  Plaintiff, however, swerved left to miss the dog and, in so

doing, swerved into the oncoming lane of traffic.  At that time, a 2002 Chevy Trail Blazer, driven

by Tara Fuller, was in the oncoming, westbound lane, and was also traveling on the crest of the hill.

Fuller testified that the hill was "pretty steep."  (*See* Statement of Tara Fuller, Ex. 8 to Def.'s Mot

for Summ. J. at 29.)  Plaintiff again swerved his vehicle to avoid hitting the oncoming vehicle.

Plaintiff testified that his car did not make contact with the oncoming vehicle.  Plaintiff's vehicle

then went off the road into the ditch, hit a separate object in the ditch, and flipped three times, end

over end.  Plaintiff sustained personal injuries in the accident, including cuts on the top of his head

and a broken vertebrae.

At the time of the accident, Select HME maintained a Business Automobile Insurance policy

with Pharmacists ("policy"), and Plaintiff was a covered driver under said policy.  The policy

contained uninsured motorist coverage with limits of $1,000,000.00.  Specifically, with regard to

the uninsured motorist coverage, the policy stated:

> We will pay, in accordance with Title 36, Oklahoma Statutes, all sums the "insured"
> is legally entitled to recover as compensatory damages from the owner or driver of
> an "uninsured motor vehicle."   The damages must result from "bodily injury"
> sustained by the "insured" caused by an "accident."  The owner's or driver's liability
> must result from the ownership, maintenance, or use of the "uninsured motor
> vehicle."

---

[1]  Because the black vehicle continued to travel on the highway, the identity of the driver
of this vehicle is unknown.

On June 1, 2006, Pharmacists received a letter from Plaintiff's attorney, wherein Plaintiff's attorney advised of his representation of Plaintiff, asked for the disclosure of the uninsured motorist limit, and advised Pharmacists that Plaintiff's medical records and bills would be forwarded once his treatment was complete. Pharmacists responded by letter, also dated June 1, 2006, acknowledging the attorney's representation of Plaintiff, providing the policy's declaration page, and advising Plaintiff's attorney of the uninsured motorist limits. Thereafter, Pharmacists initiated an investigation of Plaintiff's claim. Pharmacists obtained Fuller's statement on July 27, 2006, and also took Plaintiff's statement on September 6, 2006.

On September 18, 2006, Plaintiff formally notified Pharmacists that he was making an uninsured motorist claim pursuant to the policy. Pharmacists responded by letter dated September 26, 2007, confirming that Plaintiff was occupying a covered vehicle at the time of the accident, but questioning whether the accident presented an uninsured motorist situation because, in Pharmacists' view, the facts of the accident did not suggest that any motorists other than Plaintiff were at fault for the accident. On October 23, 2006, Pharmacists denied Plaintiff's claim after determining that Plaintiff's "accident was caused solely as a result of [Plaintiff's] own negligence, and not due in any part to the negligence of the unidentified [black] vehicle." (October 23, 2006 Letter, Ex. 12 to Def.'s Mot. for Summ. J.) Plaintiff's attorney thereafter requested a copy of Plaintiff's entire claim file, which, with the exception of documents that Pharmacists contend are privileged, was provided to Plaintiff.

Plaintiff filed suit against Pharmacists on March 20, 2007 in the District Court in and for Rogers County, State of Oklahoma. Included in his Petition are claims for uninsured motorist benefits, insurance bad faith, punitive damages, and violation of the Unfair Claims Settlement

3

Practices Act.  Pharmacists removed the case to this Court on April 24, 2007 and has moved for summary judgment as to all of Plaintiff's claims.

## II.        Summary Judgment Standard

Summary judgment is proper only if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the burden of showing that no genuine issue of material fact exists.  *See Zamora v. Elite Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006) (citation omitted).  The Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party.  *Id.* (citation omitted).  However, the party seeking to overcome a motion for summary judgment may not "rest on mere allegations" in its complaint but must "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The party seeking to overcome a motion for summary judgment must also make a showing sufficient to establish the existence of those elements essential to that party's case.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-33 (1986).

## III.       Plaintiff's Claim for Uninsured Motorist Benefits

In support of its motion for summary judgment as to Plaintiff's claim for uninsured motorist benefits, Pharmacists makes two central arguments: (1) Plaintiff's claim fails because he was not involved in an accident with another motorist; and (2) Plaintiff's claim additionally fails because, as a matter of law, Plaintiff was at fault for his accident.

Central to an analysis of Plaintiff's claim for uninsured motorist benefits is Oklahoma's uninsured motorist statute and the language of the policy.  Pursuant to the statute, an uninsured motorist policy shall provide coverage "for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles . . .

4

because of bodily injury, sickness or disease, including death resulting therefrom." Okla. Stat. tit. 36, § 3636 (hereinafter "section 3636"). In accordance with this provision, the policy states that it will pay all sums that the insured "is legally entitled to recover as compensatory damages from the owner or driver of an 'uninsured motor vehicle.'" (Policy, Ex. 5 to Def.'s Mot. for Summ. J.) Therefore, in order to succeed on his claim for benefits, Plaintiff must demonstrate that he is "legally entitled to recover damages" from the driver of the black vehicle, who Defendant concedes is considered an "uninsured motorist" under section 3636. (*See* Sept. 26, 2006 Letter from Defendant's Counsel, Ex. 10 to Def.'s Mot. for Summ. J. (stating "there is no question that the automobile in front of [Plaintiff] would be considered 'uninsured' since the identity of the driver of that automobile is unknown").)

As an initial matter, the fact that there was no contact between Plaintiff's vehicle and the black vehicle is not dispositive as to Plaintiff's claim for benefits. To the extent that Defendant's first argument suggests that such contact is necessary, this argument is directly contrary to Oklahoma case law. *See Biggs v. State Farm Mut. Auto. Ins. Co.*, 569 P.2d 430, 433 (Okla. 1977) (stating that section 3636 "extends coverage to all accidents caused by uninsured motorists . . . without any requirement of physical contact") ("Since the purpose of [section 3636] is to afford the same protection to a person injured by an insured motorist as he would have had if the negligent motorist had carried liability insurance, it would defeat the purpose of the statute to allow insurance contacts to require impact before coverage would be extended to their insured."). However, touching upon Defendant's second argument is an additional statement from *Biggs*, wherein the Supreme Court of Oklahoma states that although contact is not necessary to permit uninsured motorist benefits, "the burden of proof will be on the insured to show that the accident *was in fact*

5

*caused by an unidentified driver*." *Id.* at 433-34 (emphasis added).  The inquiry, therefore, turns on whether there is a genuine issue of material fact as to whether the accident was caused by the driver of the black vehicle.  *See id.*

After examining the record presented by the parties, the Court finds that no such genuine issue of material fact exists.  Simply stated, there is no evidence in the record that the driver of the black vehicle did anything to cause Plaintiff's accident or acted negligent in any manner.  Although the black vehicle did hit a dog, there is no evidence indicating that the vehicle's contact with the dog was due to any fault of the driver of the black vehicle.  Rather, common sense suggests that the dog likely ran out into traffic at its own peril.  Further, after hitting the dog, it is undisputed that the black vehicle continued in its lane of traffic, did not swerve off the road or into the oncoming lane of traffic, and did not come to a stop.  In this manner, the Court finds that the black vehicle did everything in its power to *avoid* any accident.  Had the black vehicle come to a sudden stop, swerved off the road or into oncoming traffic, or taken any other action other than continuing on its course, it is likely that it would have caused an accident between it and Plaintiff's vehicle.

Moreover, the record indicates that it was Plaintiff, rather than the driver of the black vehicle, who caused the accident at issue.  As pointed out by Defendant, Plaintiff violated Oklahoma law in driving on the left side of the roadway "when approaching . . . the crest of a grade or a curve in the highway where the driver's view is obstructed . . . ," Okla. Stat. tit. 47, § 11-306, and in driving in excess of the speed limit.  There is no argument that the driver of the black vehicle violated any law in the course of hitting the dog and continuing its course.  The Court also finds that Plaintiff's decision to swerve into the lane of oncoming traffic when his vision of oncoming traffic was impaired due to the crest of the hill was the cause of his accident.  Although the Court notes that

Plaintiff was forced to make a quick decision, his decision to swerve into the left-hand lane, rather than hit the dog or swerve toward the right-hand side of his lane, resulted in his car flipping over. These facts demonstrate that it was Plaintiff, and not the driver of the black vehicle, who caused the accident in this case. Accordingly, the Court holds that Plaintiff is not "legally entitled to recover damages" from the driver of the black vehicle, rendering summary judgment proper as to his claim for uninsured motorist benefits.

## IV.     Plaintiff's Claim for Insurance Bad Faith

In *Christian v. American Home Assurance Company*, 577 P.2d 899 (1977), the Supreme Court of Oklahoma extended a tort remedy to insurance contracts for a bad faith breach of the implied-in-law duty of good faith and fair dealing. "[T]ort liability may be imposed when there is a clear showing that the insurer unreasonably, and in bad faith, withholds payment of the claim of its insured." *Id.* at 905. The court held the insurer is under a legal duty to act in good faith because of the special relationship between the insurer and its insured, including the quasi-public nature of the insurance industry and the unequal bargaining power of the parties. *Id.* at 902. The tort of bad faith does not foreclose the insurer's right to deny a claim, however. *Buzzard v. Farmers Ins. Co.*, *Inc.*, 824 P.2d 1105, 1109 (Okla. 1992). An insurer has the right to resist payment and litigate any claim to which the insurer has a reasonable defense. *Id.* The decisive question involved is thus "whether the insurer had a 'good faith belief, at the time its performance was requested, that it had justifiable reason for withholding payment under the policy.'" *Id.* (quoting *Buzzard v. McDanel*, 736 P.2d 157, 159 (Okla. 1987)); *see Claborn v. Washington Nat'l Ins. Co.*, 910 P.2d 1046, 1051 (Okla. 1996) ("There is no bad faith when the insurer's denial of a claim is based on a legitimate dispute between the insurer and the insured.").

"On a motion for summary judgment by the insurer, the court must first determine, under the facts of the particular case and as a matter of law, whether the insurer's conduct may be reasonably perceived as tortious." *Willis v. Midland Risk Ins. Co.*, 42 F.3d 607, 612 (10th Cir. 1994) (applying Oklahoma law) (citations omitted); *see also Vining v. Enter. Fin. Group, Inc.*, 148 F.3d 1206, 1213 (10th Cir. 1998) (holding a plaintiff may defeat a motion for summary judgment on a bad faith claim by presenting enough evidence that insurer's conduct could be perceived as tortious); *Peters v. Am. Income Life Ins.*, 77 P.3d 1090,1097 (Okla. 2002) (internal citations omitted) ("When there is conflicting evidence from which different inferences may be drawn regarding the reasonableness of an insurer's conduct, then what is reasonable is always a question to be determined by the trier of fact by a consideration of the circumstances of each case."). "Unless the facts, when construed most favorably against the insurer, have established what might reasonably be perceived as tortious conduct on the part of the insurer, the legal gate to submission of the issue to the jury remains closed." *Willis*, 42 F.3d at 612 (internal citation omitted).

The only evidence Plaintiff cites in support of his position that Pharmacists acted in bad faith in investigating and rejecting his claim is from the Independent Adjuster Assignment Sheet ("Assignment Sheet") dated June 17, 2005, as drafted by Pharmacists Claims Examiner Marcia Miller ("Miller").  (*See* Assignment Sheet, Ex. 2 to Pl.'s Resp. to Def.'s Mot. for Summ. J.)[2] Plaintiff cites to two specific portions from the Assignment Sheet: (1) Miller's statement that "If for

---

[2]  In asserting that his bad faith claim should be submitted to a jury, Plaintiff makes other arguments attacking the specific language used in Pharmacists' Motion for Summary Judgment. (*See* Pl.'s Resp. to Def.'s Mot. for Summ. J. 10-11.)  These arguments concern semantics, however, and are not relevant to a finding that Pharmacists unreasonably withheld payment of Plaintiff's claim.

some reason the Worker's Compensation Carrier would deny this claim – under OK statutes, would the driver be free to file an underinsured motorists claim against this auto policy?'" and (2) Miller's comment that "[i]t appears that a vehicle that may have contributed to the accident left the scene." (*Id.* at 2.) The Court finds that these facts, even when construed most favorably for Plaintiff, cannot establish tortious conduct on the part of Pharmacists.

The Assignment Sheet is addressed to Wackenhuth Adjusters and requests a full investigation of Plaintiff's accident. Both the content and the date of the Assignment Sheet reflect the fact that the document, including Miller's statements therein, was drafted *before* undertaking the full investigation. As outlined in more detail above, the results of the investigation did not produce any facts suggesting that the black vehicle caused Plaintiff's accident. Rather, the evidence suggests that it was Plaintiff's actions – namely, his decision to swerve into the lane of oncoming traffic – which directly caused his accident. The Court therefore finds that Pharmacists had a "good faith belief, at the time its performance was requested, that it had a justifiable reason for withholding payment under the policy." *Buzzard*, 824 P.2d at 1109. Miller's statements in the Assignment Sheet, including her comment that the black vehicle "may have contributed to the accident," made prior to the initiation of the investigation, do nothing to demonstrate that Pharmacists acted in bad faith in refusing Plaintiff's claim. Further, not only is there no evidence showing that the refusal of the claim was in bad faith, but Plaintiff fails to point to any evidence demonstrating that Pharmacists failed to appropriately investigate the accident. Accordingly, the Court grants summary judgment as to Plaintiff's bad faith claim.[3]

---

[3] Plaintiff's Petition alleges that he is entitled to recover "punitive damages for Defendant's reckless disregard of its duty to deal fairly and act in good faith with its insured." Because the Court grants summary judgment as to Plaintiff's bad faith claim, any claim for

**V.**      **Plaintiff's Claim for Violation of the Unfair Claims Settlement Practices Act**

Plaintiff's Complaint alleges a violation of Oklahoma's Unfair Claims Settlement Practices Act ("the Act"), Okla. Stat. tit., 36 § 1250.1 *et. seq.*[4]  As argued by Defendant in its Motion for Summary Judgment, no private cause of action exists under the Act.  *See Walker v. Chouteau Lime Co.*, 849 P.2d 1085, 1086-87 (Okla. 1993) (stating "we hold the Act does not provide a private remedy . . . If the legislature intended to provide for a private right of action, we have no doubt the legislature knew how to do so.  And to create such a right is up to the legislature, not this court"). Summary judgment is therefore granted as to this claim.[5]

**VI.**      **Conclusion**

For the reasons outlined above, Defendant's Motion for Summary Judgment (Doc. 17) is GRANTED and Judgment will be entered forthwith.

**ORDERED this 25th day of February 2008.**

*Terence Kern*

**TERENCE KERN,**
**UNITED STATES DISTRICT JUDGE**

---

punitive damages is denied as well.

[4]  Plaintiff mistakenly calls the Act the "Oklahoma Fair Claims Settlement Practices Act."  (*See* Pl.'s Compl. ¶ 6.)

[5]  Plaintiff fails to respond to this argument or provide any discussion regarding his claim under the Act, suggesting that he concedes his inability to bring such a claim.